IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HANNAH FREDRICKSON, ASHLEY
KRENING, and MAURIALEE BRACKE,

        Plaintiffs,

   v.

STARBUCKS CORPORATION, a
Washington corporation,

        Defendant.

3:13-cv-00029-HU

OPINION AND ORDER

JON M. EGAN
240 Sixth Street
Lake Oswego, Oregon 97034-2931

   Attorney for Plaintiffs

CAROL J. BERNICK
DEREK D. GREEN
CHRISTOPHER F. MCCRACKEN
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201-5630

DANIEL L. NASH
PATRICIA A. MILLETT
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

///

1 - OPINION AND ORDER

GREGORY W. KNOPP
Akin Gump Strauss Hauer & Feld, LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067

    Attorneys for Defendant

MARSH, Judge

    Magistrate Judge Hubel filed his Findings and Recommendation on August 28, 2013. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

    When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. See 28 U.S.C. § 636(b)(1)(B); McDonnell Douglas Corp. v. Commodore Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981), cert. denied, 455 U.S. 920 (1982); accord Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003)(en banc).

    Plaintiffs have filed timely objections. Therefore, I have given the file of this case a *de novo* review. I find no error. I write additionally, however, to address some of plaintiff's objections.

## BACKGROUND

    A brief summary of the factual and procedural background is necessary. Plaintiffs, former employees of defendant Starbucks Corporation, filed a Class Action Complaint in the Circuit Court

2 - OPINION AND ORDER

for the State of Oregon in Multnomah County on December 10, 2012, primarily alleging that Starbucks violated various state wage and hour statutes by improperly withholding state and federal taxes from tips Starbucks imputed to its employees. Notice of Removal (#1) exh. 1. Plaintiffs allege that, pursuant to company policy, Starbucks employees distribute tips left in coffee shop tip jars among themselves based on hours worked. Id. exh. 1 at ¶¶ 5-28. Rather than instructing its employees to report the tips the employees received, plaintiff alleged that Starbucks "imputed" or "estimated" that each of its coffee shop employees received $0.50 of tips per hour worked, and improperly withheld state and federal taxes based on that assumption. Id.

Based on the above, plaintiffs pled five claims for relief on the basis that Starbucks failed to pay the applicable minimum wage, overtime wages, wages upon termination, and agreed wages, as well as made wrongful deductions from plaintiffs' and the class members' paychecks. Id. exh. 1 at ¶¶ 40-54. Each of the claims seek some combination of direct damages, statutory penalty damages, attorney's fees, and interest. Id. exh. 1 at ¶¶ 42, 45, 48, 51, 54. Finally, in its Prayer for Relief, plaintiffs additionally requested a declaration that the class members' rights were violated by defendant's actions, and an injunction enjoining Starbucks from withholding state or federal taxes based on tips in any employees' future paychecks. Id. exh. 1 at 29.

3 - OPINION AND ORDER

On January 8, 2013, defendant removed the action to federal court, asserting federal question jurisdiction and diversity jurisdiction under the Class Action Fairness Act (CAFA). Id. On February 7, 2013, defendant filed a Motion to Dismiss for Failure to State a Claim (#18). On March 4, 2013, plaintiffs filed a Motion to Remand Case to State Court (#27). After briefing and oral argument, Judge Hubel recommended that plaintiff's Motion to Remand be denied and defendant's Motion to Dismiss be granted.

## DISCUSSION

Judge Hubel found that jurisdiction was proper in this court because plaintiff's complaint ultimately raised a substantial federal question. See 28 U.S.C. §§ 1331, 1340. I agree. I appreciate, however, the substantial and difficult questions raised by the parties concerning federal question jurisdiction, and accordingly address diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d), and the applicability of the Tax Injunction Act (TIA), 28 U.S.C. § 1341.

I. **Class Action Fairness Act Diversity Jurisdiction**

CAFA provides federal courts original jurisdiction over class action lawsuits in which the class contains more than 100 members, any class member is a citizen of a state different from any defendant, and the aggregated amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6); Standard Fire Ins. Co. v. Knowles, ___ U.S. ___, 133 S.Ct. 1345, 1348

4 - OPINION AND ORDER

(2013). For purposes of defining the class at this stage of the litigation, "'class members' include 'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.'" Knowles, 133 S.Ct. at 1348 (quoting 28 U.S.C. § 1332(d)(1)(D)) (emphasis in original).

The only element of CAFA jurisdiction disputed by the parties is the amount in controversy requirement. "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez v. AT & T Mobility Services, LLC, 728 F.3d 975, 981 (9th Cir. 2013). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Insurance Company, 372 F.3d 1115, 1117 (9th Cir. 2004). In addition to the complaint, the court considers "facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Id. (quoting Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003)).

In its Notice of Removal, defendant alleged that plaintiff's Complaint, while asserting in its title that damages were "not believed to exceed $5,000,000," in fact stated claims that amounted to substantially more than $5,000,000. Notice of Removal at ¶¶ 16-26, exh. 1 at 2. Defendant attached a declaration from Adrienne

Gemperle, a "partner resources vice president for the division encompassing Oregon," attesting that during the relevant time period, Starbucks employed 6,028 individuals as baristas and shift supervisors, including 3,335 individuals whose employment terminated during the relevant time period. Declaration of Adrienne Gemperle (#3) (Gemperle Dec.) at ¶¶ 1, 13-14. Ms. Gemperle additionally averred that the average wages of the 3,335 terminated employees at the time of separation was $9.77 per hour. Id. at ¶ 6.

After plaintiffs noted that Ms. Gemperle's declaration did not specify how many employees received the "imputed tips" and found some modest discrepancies between data summarized in Ms. Gemperle's declaration and data defendant provided to plaintiff in prelitigation discovery, defendant submitted a supplemental declaration from Ms. Gemperle. Declaration of Adrienne Gemperle (#40) (Gemperle Supp. Dec.). In her supplemental declaration, Ms. Gemperle explained the discrepancies and specified that 5,921 coffee shop employees received imputed tips during the relevant time, of which 3,258 separated from Starbucks in the relevant time period. Id.

Starbucks argues that the size of the class and the relief requested on each claim, including statutory penalties, establishes that it is more likely than not that the amount in controversy exceeds $5,000,000. Plaintiffs respond that Ms. Gemperle's

6 - OPINION AND ORDER

declarations are inadmissible hearsay and otherwise unreliable, and that Starbucks has accordingly failed to carry its burden to demonstrate that the amount in controversy exceeds the jurisdictional minimum.

I find that the contents of Ms. Gemperle's declarations are admissible at this point of the proceedings. A record of regularly conducted activity is excepted from the hearsay rule if: 1) "the record was made at or near the time by – or from information transmitted by – someone with knowledge;" 2) the record was kept in the course of a regularly conducted activity of a business; 3) making the record was a regular practice of that activity; 4) the above conditions are shown by the testimony of the custodian or another qualified witness; and 5) "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

Ms. Gemperle stated that "Starbucks maintains the electronic human resources and payroll databases" from which she obtained her information "[i]n the regular course of business," that she is familiar with these databases, and "regularly rel[ies] on the data they maintain in connection with [her] job responsibilities." Gemperle Dec. ¶ 11; Gemperle Supp. Dec. ¶ 2. In addition, Ms. Gemperle stated that she has "personal knowledge of . . . the employment records maintained regarding Starbucks employees." Gemperle Dec. ¶ 1; Gemperle Supp. Dec. ¶ 1.

7 - OPINION AND ORDER

While I acknowledge that Ms. Gemperle's declarations could have been tailored to more clearly present the foundational elements of Rule 803(6) on their face, a commonsense reading of the declarations makes clear that the data relied upon by Ms. Gemperle would be admissible. See <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). The human resources and payroll databases cited by Ms. Gemperle are textbook examples of records of regularly conducted activity within the hearsay exception of Rule 803(6). I reject plaintiffs' argument that Ms. Gemperle's declarations are unreliable; the apparent discrepancies in the first declaration were adequately explained in the supplemental declaration in such a way as to not undermine the trustworthiness of the data relied upon by Ms. Gemperle. Moreover, as discussed in greater detail below, minor variations in the data would not affect the outcome of the amount in controversy analysis.

Considering Ms. Gemperle's declarations, then, I find Starbucks has established by a preponderance of the evidence that the amount in controversy in this matter exceeds $5,000,000. The statutory penalties sought are particularly significant. Plaintiff's Third Claim for Relief, which seeks unpaid wages upon termination, alleges that "Plaintiffs and the Class members are entitled to collect all wages remaining due . . . together with

8 - OPINION AND ORDER

attorney fees and costs, as well as pre- and post-judgment interest, and the 30 days of statutory penalty wages provided by ORS 652.150 and ORS 652.200." Notice of Removal exh. 1 at 27-28. Or. Rev. Stat. § 652.150 provides that the penalty wages for such a violation are payment of the aggrieved employee's wages at the final rate of pay for eight hours per day, up to an additional thirty days or until the terminal wages are paid.

Based on the data provided in Ms. Gemperle's declarations, the potential penalty wages on Claim Three *alone* are approximately $7,639,358.40.[1] Although the court does not currently have sufficient data to make an approximate calculation of plaintiff's other claims for relief, it appears all except Claim Five would also carry significant potential penalty wages. Plaintiffs also alleged entitlement to direct damages, interest, and attorney's fees on each claim. Thus, considering the information provided by Ms. Gemperle and the remedies pled in the complaint, I have no

---

[1] ($9.77 x 8 x 30 x 3,258). Ms. Gemperle stated that the average final rate of pay for the separated employees was approximately $9.77 per hour. Gemperle Dec. at ¶ 14. The final subset of class member employees used in this calculation was slightly different from that for which Ms. Gemperle provided the $9.77 value on account of the reasons provided in her supplemental declaration. See Gemperle Supp. Dec. at ¶¶ 10, 11. For this reason, and because the terminal wage used represents an approximation to two decimal points of the mean wage at separation of the terminated employees, there may be some marginal variation in the product. I note, however, that even if I assume that each relevant employee was terminated at the *lowest* minimum wage applicable during the relevant period, the product would still be $6,568,128 ($8.40 x 8 x 30 x 3,258).

9 - OPINION AND ORDER

trouble concluding that defendant has carried its burden of establishing by a preponderance of the evidence that the amount in controversy is greater than $5,000,000. Subject matter jurisdiction is appropriate under CAFA.

## II. Tax Injunction Act

Plaintiffs argue that, regardless of jurisdiction under CAFA or the federal question jurisdiction statutes, the TIA deprives this court of subject matter jurisdiction. The TIA mandates that "[t]he district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In enacting the TIA, Congress expressed "two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court . . . and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances." Hibbs v. Winn, 542 U.S. 88, 104 (2004). Thus, the "dispositive question in determining whether the Tax Injunction Act's jurisdictional bar applies is whether plaintiff's action, if successful, would reduce the flow of state tax revenue." Qwest Corp. v. City of Surprise, 434 F.3d 1176, 1184 (9th Cir. 2006).

10 - OPINION AND ORDER

Plaintiffs' suit, if successful, would not reduce the flow of state tax revenue, and falls outside both the pain meaning and the purpose of the TIA. Plaintiffs' suit does not assert that their tip income is not subject to taxation, that the state and federal taxes at issue are invalid, or that the taxes do not apply to them. Nor does plaintiffs' suit claim that Starbucks was legally prohibited in general from withholding the appropriate taxes from their tip income and forwarding it to the relevant government.[2] Rather, plaintiff's suit claims that Starbucks improperly withheld the taxes *based on its policy of "imputing" or "estimating" tips*, and seeks to recover the taxes withheld pursuant to that policy along with statutory penalties, interest, and attorney's fees.[3] While this is a tax refund suit insofar as plaintiffs are seeking

---

[2] Plaintiffs concede, for example, that Starbucks could have withheld taxes on its employees' tips by requiring the employees to report their tip earnings and withholding taxes based thereon.

[3] Plaintiffs argue that their complaint does not seek the refund of any withheld taxes. To the extent this argument affects the analysis at all, it does not withstand even a cursory review of the complaint. After incorporating by reference all previous paragraphs, each of the five claims for relief pleads that plaintiffs are entitled to direct damages. Of the 39 paragraphs that precede plaintiffs' claims for relief, all but 10 are directly related to the policy of imputing tips and the withholding of taxes thereby, with the majority of the remaining paragraphs constituting class and jurisdictional allegations. The direct damages plaintiff seeks, then, necessarily include the wages plaintiffs' argue they were entitled to, but deprived of as a result of the withholdings based on the imputed tips. Post-removal disclaimers of pled remedies are irrelevant in consideration of a motion to remand. Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, 159 F.3d 1209, 1213 (9th Cir. 1998).

11 - OPINION AND ORDER

to recover from Starbucks sums paid as taxes, it does not affect state tax revenue in any way, as plaintiffs admit that the tip income is taxable in some manner. Therefore, the TIA is inapplicable to this case, and does not deprive this court of jurisdiction.

### CONCLUSION

With these additional comments, I agree with Judge Hubel's Findings and Recommendation, including his disposition of defendant's Motion to Dismiss. Accordingly, I ADOPT Judge Hubel's Findings and Recommendation (#46). Plaintiffs' Motion to Remand Case to State Court (#27) is DENIED. Defendant's Motion to Dismiss for Failure to State a Claim (#18) is GRANTED.

IT IS SO ORDERED.

DATED this 29 day of October, 2013.

_____
Malcolm F. Marsh
United States District Judge